Pearson, J.
 

 1st. The fact that the plaintiff Houston, as a creditor of Hilton Moore, in an action against the defendant James, as administrator of Milton, charged him -with the value of the slave Pene as assets, does not create an estoppel in this action, for it is not inconsistent with the fact, that the defendant James, by the proceeding for a partition, had lost his title as administrator, by force of an estoppel created between him and Jane Moore, under whom the intestate of the plaintiffs derived title.
 

 2ndly. The transaction by which the plaintiffs’ intestate acquired title to the slaves from Jane Moore, might have been tainted with
 
 champerty,
 
 and for that reason, illegal and of no effect, bn tv there is no evidence of such champerty or illegal consideration. The testimony of Jane Moore and Mrs. Cams does not establish the fact. They swear, “ at the time of the execution of the bill of sale, made by Jane Moore to Arm-field, a controversy had arisen in regard to the title to the negro Pene, between the said Jane and James Moore, the administrator of Milton Moorethe latter claiming her as a part of the assets of his intestate’s estate; that no money was paid, and no note given at that time, and that no consideration was given, except that
 
 Armfield was to defend the law-suit, and if he lost it, was to pay her nothing, Tout if he gained it, was to
 
 
 *87
 

 return her the negroes, or others- as good;
 
 that afterwards, he gave her his note for the negroes, as he said, to show in evidence in court, but with the understanding, that it was not to be paid, and that it was destroyed by Arrnfield soon after court.”
 

 This evidence may tend to prove, that Arrnfield cheated Jane Moore out of the slaves, but it has no tendency to prove ■ that lie was guilty of champerty ; “ He was to defend the law-. suit; if he lost it, he was to pay nothing, but if he gained it, • was to return her the negroes, or others as good!” If this be , so, it shows that he was extremely liberal; but in truth, the • testimony is not intelligible, and docs not support the allega-. tion that he undertook to defend the law-suit, and in
 
 consul-
 
 •
 
 eratñon thereof,
 
 was to receive a part of the
 
 subject m
 
 cont/ro-'
 
 versxj.
 

 3rdly. The recovery in the action of replevin, as the law then provided, was the value of Pene at the time of the trial, “ with a condition to be discharged by her surrender.” Rev. Stat. ch. 101, sec. 5. The two slaves, now in controversy, were born pending that action.
 
 We
 
 can see no ground to support the position that this recovery related back to the» time of the wrongful taking, so as to affect the title to the* children ;
 
 their price
 
 has not been taken into the account, so there could be no judicial transfer of themh
 

 The slave Lewis was born within less than three years before the commencement of the action. There was no cause of action with respect to him until his birth; so the statute of limitations could not apply. The adverse possession of the mother cannot affect the question. The statute did not begin to run until there was a cause of action in respect to him.
 

 Pee Cueiam, Judgment affirmed.